IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMANDA MARTIN, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>RIVERSIDE PIZZA COMPANY and LEONARD J. NAUGLE,<br><br>Defendants. | Case No. 4:21-cv-00670-HEA |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT AGREEMENT**

Plaintiff Amanda Martin ("Plaintiff"), individually and on behalf of similarly situated persons, by and through their undersigned counsel, respectfully request that this Court grant final approval of the Settlement Agreement ("Agreement") (previously filed under seal as Dkt. #22) reached by the Parties to this action. The Agreement allowed Delivery Drivers to participate in the settlement on a hybrid class and collective action basis and tracks the settlement structure that was previously and finally approved by this court in *Fitzgerald v. Romans Road Pizza, Inc. et al.*, Case No. 4:20-cv-00577 (ED MO), and by numerous other federal courts.[1]

As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order:

(1) Finally certifying the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes;

(2) granting final approval of the Agreement;

(3) approving distribution of the Net Settlement Fund, as defined in the Agreement, to

---

[1] *See also Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN*.); Marnoch et al. v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.); *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.); *Hathaway v. Valley Pizza, Inc. et al.*, Case No. 1:20-cv-00089 (E.D. TN); and *Doyle v. Be Hurd, Inc. et al.*, Case 3:20-cv-138 (E.D. TN).

1

>     the Participating Class Members;

(4)   approving a participation award payment to Named Plaintiff Amanda Martin;

(5)   approving payment of the actual costs of the Settlement Claims Administrator;

(6)   approving attorneys' fees to Collective Counsel[2], and reimbursement of Collective Counsel's actual costs and litigation expenses to date; and

(7)   entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

## I.   INTRODUCTION

This class and collective action lawsuit for unpaid minimum wages against Defendants Riverside Pizza Company and Leonard J. Naugle ("Defendants") was settled following a mediation between the Parties, subject to the Court's approval. On April 26, 2022, the Court granted the Parties' "Joint Motion for Preliminary Approval of Settlement Agreement." (Dkt. #24). Pursuant to that Order, the Parties notified all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. *See generally*, **Exhibit 1**, Jeff Johnson Declaration. The Parties have fully complied with the terms of the Court's Order. There are no objections to the Agreement. Similarly, no Delivery Driver or Class Member has requested to participate in the Fairness Hearing. For the reasons set forth below, the Court should grant this motion.

## II.   BACKGROUND

Plaintiff filed this lawsuit ("the Litigation") on behalf of herself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges Defendants violated the Fair Labor Standards Act ("FLSA") and related state laws by failing to pay her and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff

---

[2] The term "Collective Counsel" refers to the attorneys who represent Plaintiffs and the Collective Members.

and all other delivery drivers were paid lawfully and in compliance with the FLSA and state laws.

The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day mediation before an experienced mediator, Allen Blair, Esq., that took place on January 13, 2022. Prior to the mediation, the Parties engaged in discovery that included the production of all necessary class-wide data in order for Plaintiff to calculate class-wide damages, which calculations Plaintiff shared with Defendants prior to the mediation. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and state law. Utilizing these calculations, Plaintiff concluded she had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair settlement of this matter. Following this full-day successful mediation session, the Parties' counsel negotiated the full settlement terms. There have been numerous tele-conferences and emails exchanged between representatives of the Parties. The terms of the Parties' settlement are set forth in the Parties' Agreement (previously filed under seal as Dkt. #22).

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that their reimbursements to Delivery Drivers are reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the minimum wage. The Parties dispute the applicability of potential penalties, including liquidated damages. Defendants further contend that even if liability were established by Plaintiff, which it denies, it acted in good faith and that a two-year, as opposed to an extended statute of limitations should apply to Plaintiff's claims. If the Court were to accept these arguments, it would negate a substantial percentage of alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendants outside of the two-year federal statutory period. Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Delivery Driver Settlement Class Members who were employed by Defendants during the three-year period preceding the filing of the Complaint. Plaintiff

3

respectfully submits that this Motion should be granted because the proposed Agreement satisfies all the criteria for approval under federal law, falls well within the range of reasonableness, and is unopposed.

## III. THE TERMS OF THE AGREEMENT

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as:

> All persons who have worked as a delivery driver for Riverside Pizza Company or LJN Management Corporation during the three-year period prior to April 26, 2022.

The Agreement allowed Delivery Drivers to participate in the settlement on an opt-in basis, tracking the settlement structure of hybrid cases previously settled by Parties' Counsel.[3] If approved by the Court, pursuant to the Agreement, and following the settlement notice period, the distribution of the Settlement Amount is as follows:

1. The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed that specified in the attached Declaration of Jeff Johnson, Vice President of CAC Services Group, LLC;

2. As further detailed in ¶ C below, Plaintiff Martin will receive the amount specified in the Agreement as a service award in recognition of the work involved and the benefits achieved by the Plaintiffs;

3. As further detailed in ¶ D below, Class Counsel will receive the amount specified in the Agreement in attorneys' fees that equate to one-third of the Total Settlement Fund and advanced litigation costs;

4. All Authorized Claimants,[4] Settlement Class Members that chose to affirmatively

---

[3] *See e.g., Fitzgerald v. Romans Road Pizza, Inc. et al., Case No. 4:20-cv-00577 (ED MO); Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.); *Marnoch et al. v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.); *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.); *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.); *Hathaway v. Valley Pizza, Inc. et al.*, Case No. 1:20-cv-00089 (E.D. TN); and *Doyle v. Be Hurd, Inc. et al.*, Case 3:20-cv-138 (E.D. TN.).

[4] The approximately 17% of Class Members that affirmatively opted-in to the Settlement. This level of participation is

4

opt-in to the settlement, will receive their share of the applicable FLSA Claim Fund;

5. Any Settlement Class Members that have elected to opt-out[5] of the Settlement will retain all rights against Defendants. All remaining Settlement Class Members will receive a minimum payment,[6] from the Rule 23 Fund; and,

6. All Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will remain eligible to submit a claim for up to the full amount of their Potential Settlement Payment (as defined in the Agreement) for an additional six months.

## IV.     THE COURT SHOULD APPROVE THE AGREEMENT

### A. Settlement is Fair, Reasonable, and Adequate Pursuant to the FLSA and Rule 23

The Eighth Circuit, and pursuant to Rule 23, applies a four-factor test to determine whether a class action settlement is fair, reasonable, and adequate. The test assesses:

1. the merits of the plaintiff's case, weighed against the terms of the settlement;

2. the defendant's financial condition;

3. the complexity and expense of further litigation; and

4. the amount of opposition to the settlement.

*In re: Wireless Telephone Federal Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005). "The most important consideration in deciding whether a class settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id*. (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)). The Settlement Agreement meets all four of these factors.

---

in line with Counsel's prior estimation and class actions handled for delivery drivers by Class Counsel. *See id*. (participation rates ranged from 16-21%).

[5] There were two requests for exclusion. See **Exhibit 2**, Status Report from Third-Party Administrator.

[6] Expected to exceed the range of those previously approved by courts in related litigation. *See Doyle v. Be Hurd, Inc. et al,* Case 3:20-cv-138 (E.D. TN.)(proposed minimum payment of $32.50 recently approved in separate delivery driver mater handled by Class Counsel).

5

Although Rule 23 does not govern FLSA collective action claims, the standard for approving an FLSA collective action settlement is similar. To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees. *King v. Raineri Const., LLC*, No. 4:14-CV-1828 CEJ, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015); *Fry v. Accent Mktg. Servs., L.L.C.*, No. 4:13–CV–59 (CDP), 2014 WL 294421, at *1 (E.D.Mo. Jan. 27, 2014). To determine whether a settlement of an FLSA collective action is fair and equitable to all parties, courts apply the same fairness factors as apply to a proposed class action settlement under Rule 23. *Id.* Applying the factors set forth above, there is no question this litigation involves a bona fide dispute, the settlement is fair and equitable for the reasons stated below, and the settlement agreement provides for a reasonable award of attorneys' fees and costs.

   1. **Merits of Plaintiff's Claims Balanced by the Terms of the Settlement**

The strength of Plaintiff's claims balanced against the amount offered in settlement favors a finding that the proposed settlement is fair, reasonable, and adequate. The temptation to conduct a full trial on the merits must be resisted. *See Gruinin v. Int'l. House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1974) ("neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."). As one court has explained, "[i]t is not necessary, nor expected, that plaintiffs obtain through settlement all that would have been realized through a victorious trial. It is the intrinsic nature of a settlement that no party will completely fulfill its absolute goals, *Fox v. Glickman Corp.*, 253 F. Supp. 1005, 1012 (S.D.N.Y. 1966), but rather that, after considering all the relevant circumstances, it is resolved by all involved that it is in their best interests to terminate the litigation on the basis of a fair and reasonable compromise." *Stull v. Baker,* 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976). This settlement is a fair and reasonable compromise of the claims

6

alleged.

The Settlement Agreement, by contrast, provides an immediate award to all class and collective action members who chose to timely submit claims. Counsel for the parties believe that the proposed settlement is fair, reasonable, and adequate when balanced against the strength and weaknesses of each side's case and the burdens involved in presenting such proof. Accordingly, this factor weighs in favor of approval of the parties' settlement.

### 2. The Complexity and Expense of Further Litigation

The time and cost of further litigation in this case also favors settlement. *See In re Charter Commun's., Inc.*, 2005 U.S. Dist. LEXIS 14772, *26 (E.D. Mo. Jun. 30, 2005) ("The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement agreement should be affirmed."). With continued litigation, motion practice and appeals, this case could easily continue for years. Indeed, were it not for this settlement, the parties would proceed to vigorously litigate this case, as the merits of the allegations are fully disputed. Continued litigation would require class certification briefing pursuant to Fed. R. Civ. P. 23, numerous depositions, likely expensive expert witness testimony to quantify damages and dispositive motions filed by both sides. Moreover, even if these matters survived a dispositive motion or a subsequent motion for decertification of a class, a trial in this case would require an extraordinary amount of time, energy, expense, and resources. Furthermore, the appeals process would further delay any judgment possibly obtained at trial.

When balanced against the tremendous time and cost associated with continued litigation, the immediate recovery provided for with this settlement favors a determination that the settlement is fair, reasonable, and adequate. Given the extensive costs that will result from continued litigation of this case, when weighed against a fair, reasonable, and equitable settlement, this factor weighs in favor of approval of the parties' proposed and fully negotiated settlement.

### 3. The Amount of Opposition to the Settlement

"The existence of objecting class members is relevant ... when considering the merits of a proposed settlement." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995) (citing *Holden v. Burlington Northern, Inc.*, 665 F.Supp. 1398, 1422 (D.Minn.1987)). However, a settlement may be deemed fair even when a large number of class members oppose it. *Id*.

There have been no objections to the Settlement Agreement.[7] *See* **Exhibit 2**. Accordingly, this factor weights in favor of settlement approval.

### 4. The Settlement Meets the Requirements of Rule 23(a) For Settlement Purposes[8]

As previously set forth in the preliminary approval Motion, Plaintiff asserts that certification is proper under Rule 23 for settlement purposes as well.

#### a. Numerosity

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. In the instant case, the Settlement Class consisted of 414 individuals, which clearly satisfies the numerosity requirement of Rule 23(a)(1). *See White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 380 (E.D. Mo. 2014) (citing *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05CV01108ERW, 2009 WL 4782082, at *5 (E.D.Mo. Dec. 8, 2009)) (a class as small as 40 class members, however, is "generally sufficient").

#### b. Commonality & Typicality

Commonality and typicality "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

---

[7] *See Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 853 (E.D. La. 2007) ("The absence or small number of objections may provide a helpful indication that the settlement is fair, reasonable, and adequate."); *Retsky Family Ltd. Partners v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397, at *4-5 (N.D. Ill. Dec. 10, 2001) ("The absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

[8] For purposes of settlement only, Defendants do not oppose the statements made in the instant Motion. However, Defendants do not waive, and expressly reserve, any defenses or denials that class certification is proper in this case should the Court not approve the settlement or the settlement not be perfected.

8

157 n.13 (1982). The rule does not require that every question of law or fact be common to every member of the class, *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974); *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972), and may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *American Finance Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendants include:

- Whether the class members' vehicle-related expenses resulted in payment below minimum wage; and

- Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

To satisfy the typicality requirement of Rule 23(a)(3), Plaintiff must show that his claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This requirement is generally considered to be satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (citing C. Wright & A. Miller, Federal Practice and Procedure s 1764 at n.21.1 (Supp.1982)). See *Smith v. B & O R. R.*, 473 F.Supp. 572, 581 (D.Md.1979).

Plaintiff alleges that she was not paid for all reimbursement expenses in a manner compliant with federal and state law. As a result, Plaintiff claims that she and the other putative class members

9

are owed additional compensation. Plaintiff contends that the legal standards and requirements for proving the subject wage and hour claims are the same for Plaintiff's individual claims and those of all of the putative class members. Thus, for settlement purposes, Plaintiff's claims are sufficiently typical of the putative class to satisfy Rule 23(a)(3).

    c. **Adequacy**

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. Plaintiff asserts that neither she nor her counsel have any interests antagonistic to those of the putative class members. Plaintiff has communicated regularly with Class Counsel, and Plaintiff, through counsel, has prosecuted this action vigorously on behalf of herself and the putative class. As set forth above and in the attached Declaration of J. Forester, Plaintiff contends that her counsel has considerable experience as lead counsel in class action wage and hour litigation. Thus, for settlement purposes, Plaintiff has established that Plaintiff and Class Counsel will fairly and adequately protect the interests of the putative class to satisfy Rule 23(a)(4).

    5. **The Settlement Meets the Requirements of Rule 23(b)(3) For Settlement Purposes**

Plaintiff asserts that certification is also proper under Rule 23(b)(3) for settlement purposes. Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court should determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

    a. **Predominance**

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id*. As explained above, Plaintiff asserts that the common nucleus of facts in the present case derives from the alleged practices that excluded

certain incurred expenses from Plaintiff's reimbursement pay. Plaintiff alleges that the Settlement Class Members would be entitled to the same legal remedies. Additionally, Plaintiff contends that class certification in this case serves the judicial economy function of Rule 23 class actions.

### b. Superiority

Plaintiff alleges that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Webb v. City of Maplewood, Missouri*, 340 F.R.D. 124, 140 (E.D. Mo. 2021) (finding in favor of superiority factor because "the Class includes hundreds of plaintiffs, and class certification will allow for the resolution of their claims in a single forum… It is unlikely that many if not most of these individuals would ever commence litigation on their own behalf to vindicate their rights.").

Plaintiff asserts that the alternative method of resolution could be 400, or more, individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class Members have had the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation. Plaintiff believes that concentrating the litigation of the claims in this particular forum would be the most efficient manner of adjudicating all of the claims of the Settlement Class.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement.

*See Amchemr*, 521 U.S. at 620.

### B. The Amount of the Settlement

The recovery here falls well within the range of comparable settlements approved around the nation in wage and hour claims in that the negotiated total settlement amount equates to in excess of 50% of recoverable damages and is well within the range of fairness as determined previously by courts.[9] A balancing of the strength of Plaintiff's case on the merits against the extent of the settlement offer weighs heavily in favor of settlement approval. Likewise, the Parties' settlement reflects a beneficial compromise for class members, considering the inherent risks, costs, and delays associated with trial and probable appeal. Accordingly, the Parties' settlement will provide meaningful relief to the class, if approved.

### C. Named Plaintiff's Service Award is Warranted

The Settlement Agreement provides for a reasonable service award to Named Plaintiff Amanda Martin. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Sauby v. City of Fargo*, No. 3:07-CV-10, 2009 WL 2168942, at *2 (D.N.D. July 16, 2009) (citing *Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)); s*ee also Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of

---

[9] *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (26% or greater recovery sufficiently reasonable in wage and hour dispute); *Jones v. Agilysis, Inc.*, 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (30% or greater recovery in wage and hour dispute constituted a "tangible monetary benefit" for the class members); *Lewis et al. v. Lucky 2 Logistics, LLC*, Case 2:19-cv-323 (ED WI)(40% recovered). *Fuentes Cordova v. R&A Oysters, Inc.*, 2016 U.S. Dist. LEXIS 123042, *2-3 (S.D. Ala. Sept. 12, 2016) (finding settlement constituting 50% recovery of wages (actual damages) as estimated by expert report to be fair and reasonable); *Nall v. Mal-Motels, Inc.*, 2014 U.S. Dist. LEXIS 197441, *8 n.8 (M.D. Fla. Apr. 7, 2014) (finding settlement constituting 40% of damages claimed was fair and reasonable settlement); *Vigna v. Emery Fed. Credit Union*, 2016 U.S. Dist. LEXIS 166605, *8 (S.D. Ohio Dec. 2, 2016) ("The Court agrees that nearly all of the terms of the Settlement are fair and reasonable, particularly in light of the fact that the total Settlement Fund constitutes a 55% recovery of wages [alone, not liquidated damages] as estimated by the expert's report."); *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 611-12 (E.D. Cal. 2015) (approving FLSA settlement equating to approximately 46% of the maximum damages calculated by the plaintiffs (collecting cases)).

encouraging individuals to undertake the responsibility of representative lawsuits").

Here, Named Plaintiff Amanda Martin substantially assisted counsel in achieving this settlement on behalf of all of the Opt-In Plaintiffs. She first sought and obtained counsel with specific experience litigating minimum wage claims and initiated this action. She provided ongoing guidance to counsel. From the beginning, she endeavored to protect the interests of all Class Members and to obtain a substantial recovery on their behalf. The award also falls well within the range of other service awards typically approved by courts in this Circuit.[10] Moreover, the notices of settlement sent to all Opt-In Plaintiffs specifically informed them of the proposed service award to the Named Plaintiff and no Opt-In Plaintiff objected to that award. Accordingly, the Court should grant final approval of Plaintiff's service award request.

### D. Attorneys' Fees and Costs Provided in the Settlement are Appropriate

For their efforts on behalf of the class, Plaintiff's attorneys are applying for compensation from the Total Settlement Fund. It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all the beneficiaries. *Id.* Class Counsel is also entitled to recover attorney's fees and costs under the federal Fair Labor Standards Act, 29 U.S.C. §201, et seq., (the "FLSA") and state law.

1. **The Requested Attorney's Fee Should Be Approved as Reasonable when Viewed as a Percentage of the Total Settlement Fund**

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common

---

[10] *Wolfert v. UnitedHealth Grp., Inc.*, 2009 U.S. Dist. LEXIS 74261, *7 (E.D. Mo. Aug. 21, 2009) (approving $30,000.00 service award).*Braden v. Foremost Ins. Co. Grand Rapids*, 2018 U.S. Dist. LEXIS 176236, *23-24 (W.D. Ark. Oct. 9, 2018) (awarding $10,000.00 service award as "fair and reasonable"); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 U.S. Dist. LEXIS 130180, *27 (N.D. Iowa Nov. 9, 2011) (awarding six named plaintiffs $10,000.00 service awards each); *Sauby v. City of Fargo*, 2009 U.S. Dist. LEXIS 139836, *8 (D.N.D. Dec. 14, 2009) (approving $10,000.00 service award as "fair and reasonable"); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (approving service awards of $15,000.00 to named plaintiffs).

13

fund case is not only approved but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative, ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn 2005); *see also Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (approving the percentage method of awarding fees). Applying *Johnson*, courts in this Circuit routinely state their preference for and apply the percentage-of-the-fund approach in awarding attorneys' fees in common fund cases. *See e.g., Petrovic*, 200 F.3d 1140, at 1157; *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F.Supp.2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. It is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. It rewards efficiency and provides counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy*, 364 F.Supp.2d at 993. Use of the percentage method decreases the burden imposed on the court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

> Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted); *see also, Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 919 F.3d 763, 2019 Employee Benefits Cas. (BNA) 97998 (4th Cir. 2019)(recognizing that the employee that benefits from a lawsuit without contributing to its costs,

would be unjustly enriched at the successful lawyer's expense).

Here, application of the percentage of recovery method supports Class Counsel's one-third request. This percentage recovery falls well within the range that is regularly approved by courts, including in analogous pizza delivery driver cases finally approved by this court. See e.g., *Fitzgerald v. Romans Road Pizza, Inc. et al.*, Case No. 4:20-cv-00577 (ED MO) (33.3% of total fund awarded). Application of the "percentage of recovery" method supports Class Counsel's requested fee recovery.

**2. The Requested Fee Should Also Be Approved as Reasonable In Light of Additional Factors**

### a. The Result Obtained for the Class

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also* Fed. R. Civ. P. 23(h) (Advisory Committee notes to 2003 amendments explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members").

Through diligent pursuit of the claims and skillful negotiation, Class Counsel has provided a successful result for the class and collective by creating multiple settlement funds. The settlement was achieved through efforts of Class Counsel and without the necessity of overly prolonged litigation and trial, justifying a fee equal to one-third (1/3) of the settlement fund created through settlement. The settlement delivers a per class member recovery within the realm of results which they could reasonably expect to achieve, assuming a successful trial. *Supra*. The fact that these substantial amounts are available to class members without the uncertainty and burden of trial and are being delivered through this settlement rather than after years of additional litigation, qualifies the results of this settlement as excellent under any reasonable assessment.

Moreover, given the defenses to liability and damages raised by Defendants, the settlement achieved may be equal to or more than the class or collective would have recovered if it had

15

proceeded to trial. "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.*, 70 F.R.D. 622, 629 (D. Kan. 1976). In sum, Class Counsel respectfully submits that the class and collective could not have gotten better representation and the result achieved reflects that fact.

### b. The Quality, Skill, and Efficiency of the Attorneys Involved

Class Counsel is experienced in wage and hour litigation, including minimum wage claims on behalf of pizza delivery drivers. *See generally*, Declaration of J. Forester. Through their experience, Class Counsel was able to efficiently identify, focus and argue the issues, resulting in a favorable resolution. *Id.* The quality and efficiency of Class Counsel's work on this case was superior and is reflected in the result. Through many hours of research and fact investigation, Class Counsel developed a persuasive case, and during negotiations with Defendants demonstrated that fact. This recovery for the class and collective is a direct result of effective lawyering and the acumen and diligence of class counsel. Such skill and efficiency should be rewarded. *See Lewis et al. v. Lucky 2 Logistics, LLC et al.*, Case No. 2:19-cv-323 (E.D. WI) (commending Class Counsel for its efficiency and skill when recently and finally approving hybrid delivery driver settlement that utilized a similar alternative dispute process and settlement structure as in this matter).

### c. The Difficulty and Risks Attendant to the Litigation

From the outset, Class Counsel faced many risks in pursuing this litigation to a successful conclusion. Defeat was a risk at numerous stages: conditional certification under the FLSA, decertification, class certification, dispositive motions, trial, and appeal, the significant potential of Defendants being unable to pay a judgment. Such risk should be recognized. In addition, had this settlement not been achieved, Plaintiff faced additional expensive discovery and motion practice, lengthy fact and expert discovery, a costly jury trial, and possibly lengthy post-trial appeals, with ultimate uncertainty of success. Numerous cases have recognized that these types of risks are

16

important factors in determining the fee award. *See In re Xcel*, 364 F. Supp. 2d at 994 (noting complexity of class action as factor in determining reasonableness of fee award); *In re Charter Commun's, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *47-48 (finding that class actions "are by their nature, complex and difficult to prove."). The complexity and risks of this action clearly support the fee sought.

### d. The Time and Labor Involved

Class Counsel have spent considerable time, energy and resources in order to properly and adequately investigate the facts and legal consequences of pursuing this action, researching and briefing the merits of the claims and defenses, arguing for collective action, preparing discovery, reviewing voluminous data produced by Defendants, resolving the claims, etc. Despite receiving no payment for their work to date in this case and even when no accounting is done for time to be incurred throughout the final distribution period, Class Counsel's lodestar crosscheck is already well within the range of reasonableness.[11] See *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting courts within Eighth Circuit have approved lodestars up to 5.6); *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) (approving lodestar with multiplier of 2.7); *In re Charter Commc'ns, Inc., Securities Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *22 (E.D. Mo. June 30, 2005) (approving lodestar with multiplier of 5.6).

### e. The Complexity of this Action's Factual and Legal Questions

Courts recognize that the complexity and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97, 103 (W.D. Mo. 1983)(citing *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116–18 (3rd Cir.1976)); *see also Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). Given the inherent complexities of a wage and hour collective action, the

---

[11] Based on hours incurred to date and applying previously-approved billing rates, the current lodestar multiplier is below 2.5.

fee requested is more than fair.

### f. The Contingent Nature of the Case and the Financial Burden Carried by Class Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties to overcome in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over the normal hourly rates for winning contingency cases. See Richard Posner, Economic Analysis of Law, § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Class Counsel have received no compensation during the course of this litigation and have spent a substantial amount of time to obtain this result and costs.

### g. Awards in Similar Cases

Many courts around the nation, including this district, award fees in wage and hour class claims at or very near the one-third (1/3) requested here. *See, e.g., Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017) (affirming fee award that represented one-third of the total settlement fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (same); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *12-13 (E.D. Mo. May 15, 2018) (same); *Netzel v. W. Shore Grp., Inc.*, 2017 U.S. Dist. LEXIS 214868, *20-24 (D. Minn. May 8, 2017) (same, collecting cases); *Edwards v. Orchestrate Hosp. Grp., L.L.C.*, 2017 U.S. Dist. LEXIS 91576, *9-10 (S.D. Iowa Feb. 23, 2017) (same); *Barfield v. Sho-Me Power Elec. Coop.*, 2015 U.S. Dist. LEXIS 70166, *12-13 (W.D. Mo. Jun. 1, 2015) (collecting cases from the Eighth Circuit in which courts found that one-third of the common settlement fund was a reasonable attorneys' fee, plus separate reimbursement for costs).

In addition, the requested fees reflect the private marketplace, a result repeatedly encouraged

by the courts.[12] These percentages are the prevailing market rates throughout the United States for contingent representation.

### h. No Objections

After notice and disclosure, no class members have objected to the requested fees. Defendants expressly consent to the requested fee award, have reviewed this document, and do not oppose this motion.

### i. Plaintiff's Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Class counsel request reimbursement for expenses incurred in prosecuting this litigation on behalf of the class and collective in an amount not to exceed that specified in the Agreement and as further corroborated by the attached declaration of J. Forester.

## V. CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator. For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

Respectfully submitted,

/s/ *Katherine Serrano*
Katherine Serrano*, Texas Bar No. 24110764
D. Matthew Haynie, Texas Bar No. 24087692
**FORESTER HAYNIE PLLC**
400 N. St. Paul Suite 700

---

[12] *See In re Cont'l. Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. *See In re M.D.C. Holdings Sec. Litig.*, 1990 U.S. Dist. Lexis 15488, *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax
matthew@foresterhaynie.com
kserrano@foresterhaynie.com
*Admitted pro hac vice*

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using the Court's ECF System and will be served on all counsel of record using the same.

/s/ *Katherine Serrano*
Katherine Serrano